## In re Anonymous Nos. 8 D.B. 87 and 84 D.B. 87

Disciplinary Board Docket nos. 8 D.B. 87 and 84 D.B. 87.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

FLAHERTY, *Member,* March 1, 1993—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

### HISTORY OF PROCEEDINGS

On July 15, 1988, petitioner was suspended from the practice of law in Pennsylvania for a period of three months, pursuant to Supreme Court order.

On September 11, 1989, the Supreme Court issued another order, this time suspending petitioner from the practice of law for a period of four months.

Petitioner filed a petition for reinstatement to the Pennsylvania bar on August 19, 1991.

On August 28, 1991, the matter was referred to Hearing Committee [    ], which eventually consisted of [    ], Esq.; [    ], Esq.; and [    ], Esq., who replaced original Committee Chairperson, [    ], Esq.

Petitioner filed a motion for summary disposition on October 3, 1991, to which the Office of Disciplinary Coun-

sel responded on October 7, 1991. The motion was dismissed by order of the Disciplinary Board on October 8, 1991.

On March 19, 1992, a hearing on the matter of petitioner's bid for reinstatement was held. Hearing Committee [    ] filed its report on June 10, 1992 and recommended that petitioner's request for reinstatement be granted.

The matter was adjudicated at the July 1992 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The following findings are based upon the stipulation of the parties and documentary and testamentary evidence presented to the Hearing Committee.

(1) Petitioner was born in 1949 and admitted to the Pennsylvania bar in 1980.

(2) On August 11, 1986, [A] paid petitioner $100 and retained him to represent him in a driving under the influence matter.

(3) On September 8, 1986, [A] received notice of suspension of his license for refusal to take a breathalyzer test at the time he was stopped, to become effective October 7, 1986.

(4) Petitioner attended a preliminary hearing on [A's] behalf on September 10, 1986, at which time it was determined the matter would be bound over for court. [A] paid petitioner an additional sum of money at this time, an amount that is in question as petitioner failed to furnish him with a receipt.

(5) Petitioner formally entered his appearance on behalf of [A] with his September 19, 1986 filing of a praecipe for appearance with the Clerk of Courts.

(6) On September 12, 1986, an information was filed concerning the two charges, which petitioner acknowledged receipt of on October 17, 1986.

(7) Petitioner took further actions in October 1986 on [A's] behalf, including receiving a subpoena, filing a statutory appeal of the license suspension, and acknowledging a notice to defendant regarding discovery and pretrial motions.

(8) One of the charges against [A] was subsequently dismissed. Petitioner informed [A] a hearing on the second charge would be held on January 14, 1987, on which date the appeal was dismissed because neither [A] nor petitioner appeared.

(9) Petitioner took no further action on [A's] behalf.

(10) In June 1986, petitioner was contacted by [B], whom he agreed to represent in an estate matter for a fee of approximately $2,500, of which petitioner received $250.

(11) At the time of petitioner's retention, [B's] aunt's will, which he wished to contest, had already been entered into probate and letters testamentary granted in August 1985. The inheritance tax return had also been filed.

(12) Subsequently, further actions were taken by the executor to settle the estate. Petitioner failed to file a new notice of appeal on behalf of [B] after the initial appeal he filed lacked [B's] signature. Petitioner also failed to contact the executor of the estate on behalf of [B].

(13) Since his suspension, petitioner has been employed as a house painter, salesman, proxy solicitor and, most recently, as a paralegal.

(14) [C], Esq., [D], Esq. and [E], Esq. all testified on petitioner's behalf before the Hearing Committee, providing unequivocal support for his reinstatement and relaying their positive opinions about his fitness to re-

sume the practice of law. [E], who has employed petitioner as a paralegal since 1990, described how petitioner's job entails the drafting of briefs and complaints and researching, and characterized his work as "excellent." (N.T. 22.) "He keeps on top of the developments in the law." *Id.*

(15) [F], Esq., and [G], Esq., submitted letters to the Hearing Committee which attested to petitioner's excellent reputation and ability to resume the practice of law.

(16) Petitioner told the Hearing Committee that he keeps his legal knowledge current by reading advance sheets and library materials.

(17) Petitioner also testified that he would implement better managerial skills in the future to avoid the ineffective procedures he believes led to his misconduct.

(18) The Office of Disciplinary Counsel is unopposed to petitioner's reinstatement.

## CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disciplined is not so egregious as to preclude consideration of his petition for reinstatement.

(2) Petitioner's resumption of the practice of law will not compromise the interests of the public nor the integrity of the bar.

## DISCUSSION

The issue in the instant proceeding is whether petitioner's bid for reinstatement should be granted.

When an attorney has inactive status and wishes to become a member of the bar again, it is incumbent upon him to demonstrate his ability to resume the practice of law in this Commonwealth. The misconduct which oc-

curred when petitioner was practicing law consisted of the neglect of an entrusted legal matter and the intentional failure to carry out a contract of employment entered into with a client for the provision of professional services.

As in any reinstatement matter, it is crucial to consider whether any attorney misconduct is so egregious as to pre-empt entertainment of the lawyer's petition for reinstatement. See *Office of Disciplinary Counsel v. [H]*, 4 D.B. 76 at 4. This petitioner, while acting unprofessionally during the period preceding his absence from the bar, has not, in our opinion, engaged in any conduct so offensive or outrageous as to preclude resumption of the practice of law in this Commonwealth.

We are impressed with the manner in which petitioner has conducted himself during his absence from the bar. See *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A. 2d 872 (1986). During the past several years, petitioner has been gainfully employed, and has worked as a paralegal since 1990. The positive comments of his employer and several members of the bar lead to the conclusion that petitioner has maintained his knowledge of the law and even learned about new developments through his employment and reading. This fact, coupled with the favorable testimony about petitioner's good reputation, leads us to the conclusion that his reinstatement would not be detrimental to either the public or the bar.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for reinstatement be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the nec-

essary expenses incurred in the investigation and processing of said petition for reinstatement.

Messrs. Paris and Witherel did not participate in the adjudication.

### ORDER

And now, March 30, 1993, upon consideration of the report and recommendations of the Disciplinary Board dated March 1, 1993, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.